

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| MM FINANCE, LLC, DBA EZ MONEY CHECK CASHING, | ) ) ) | |
| Appellant, | ) | WD84379 |
| v. | ) ) | OPINION FILED: |
| | ) | April 12, 2022 |
| ANDREA I. ROSE, | ) ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Caldwell County, Missouri**
**The Honorable Jason A. Kanoy, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Karen King Mitchell and Gary D. Witt, Judges

MM Finance, LLC, appeals from the judgment entered in its favor and against Andrea Rose by the Associate Circuit Division of the Circuit Court of Caldwell County, Missouri, on MM Finance's collection petition relating to a consumer loan promissory note. MM Finance asserts that the trial court erred in failing to award prejudgment and post-judgment interest at the contract rate. We reverse and remand for further proceedings.

## Background

MM Finance, a Nebraska limited liability company, was authorized by the State of Missouri's Division of Finance to conduct a consumer installment loan business in St. Joseph, Missouri, under the name EZ Money Check Cashing. On May 17, 2019, MM Finance, as lender, and Rose, as borrower, executed an installment loan promissory note, in which Rose promised to pay to MM Finance the principal sum of $700, bearing interest at the rate of 360% per annum until paid in full, with a finance charge of $1,902.31, and total payments of $2,602.31. Under the amortization schedule, Rose was required to make twenty-five payments of $101.13 and one payment of $99.06 in monthly installments. Rose defaulted on the promissory note by failing to make the required payments. After MM Finance credited the payments that she did make, a principal balance of $677.13 remained unpaid.

On November 1, 2019, MM Finance filed a verified petition seeking collection on the promissory note, requesting judgment against Rose in the sum of $677.13, with prejudgment interest at the contract rate totaling $581.03, attorney's fees of $101.57, late fees of $80.00, court costs of $52.00, and service of process fees of $38.05, for a total of $1,529.78, as well as post-judgment interest at the contract rate. The trial court conducted a bench trial on January 27, 2021, at which both a representative of MM Finance and Rose testified.

The trial court entered judgment on February 16, 2021, in favor of MM Finance and against Rose, as follows:

| | |
|---|---|
| Principal: | $677.13 |
| Interest: | $ 91.62 |
| Attorney Fees: | $101.57 |
| All court costs assessed to Defendant; to date: | $ 52.00 |
| Service of process fees assessed to Defendant: | $ 38.05 |
| **Judgment Balance:** | **$960.37** |

The trial court noted that MM Finance requested prejudgment and post-judgment interest at the contract rate of 360%, "but this Court finds that contractual rate usurious."  Ultimately, the trial court awarded prejudgment and post-judgment interest "at the statutory rate of nine percent (9%) per annum until satisfaction."

On February 18, 2021, MM Finance filed a motion to amend judgment, demanding the trial court, *inter alia*, award prejudgment and post-judgment interest at the contract rate of 360%.  The trial court denied MM Finance's post-trial motion on March 10, 2021.

MM Finance timely appealed.

## Standard of Review

In a court-tried case, the trial court's judgment will be sustained by the appellate court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."  *Mo. State Conf. of Nat'l Ass'n for the Advancement of Colored People v. State*, 607 S.W.3d 728, 731 (Mo. banc 2020) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).  "Statutory interpretation is an issue of law that this Court reviews *de novo*."  *Id*. (quoting *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019)).

## Analysis

In both of MM Finance's points on appeal, it asserts that the trial court erroneously declared the law in finding that the agreed-upon contract interest rate of 360% was usurious.  MM Finance argues that the trial court erroneously declared the law on prejudgment interest (Point I) and on post-judgment interest (Point II) by awarding prejudgment and post-judgment interest at the statutory rate and refusing to award prejudgment and post-judgment interest at the contract rate agreed to by the parties.  We discuss these points together for ease of analysis.

3

Under section 408.030.1,[1] the maximum annual interest rate that a lender may charge in Missouri is ten percent or the "market rate," which is calculated according to long-term U.S. government bond yields. "A loan that charges more than the maximum interest rate is usurious." *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 486 (Mo. App. W.D. 2010). "[U]sury is the taking or exacting of interest at a rate in excess of that allowed by law for the loan or use of money." *Id*. (quoting *Redd v. Household Fin. Corp.*, 622 S.W.2d 255, 257 (Mo. App. E.D. 1981)).

"Notwithstanding any other law to the contrary," a consumer installment lender licensed by the Missouri Division of Finance may make secured or unsecured consumer installment loans "of any amount and payable in not less than four substantially equal installments over a period of not less than one hundred twenty days." § 408.510. Further, § 408.510 provides that "[s]uch consumer installment lenders shall contract for and receive interest and fees in accordance with sections 408.100, 408.140, and 408.170." Relevant to this appeal, section 408.100 applies to "all loans which are not made as permitted by other laws of this state," including usury laws, and provides that "[o]n any loan subject to this section, any person, firm, or corporation may charge, contract for[,] and receive interest on the unpaid principal balance at rates agreed to by the parties." In other words, the legislature has carved out a usurious loan rate exception for small installment consumer loans. *See Ponca Fin. Co., Inc. v. Esser*, 132 S.W.3d 930, 932 (Mo. App. W.D. 2004).

Section 408.020 is the general prejudgment interest statute, authorizing nine percent per annum for prejudgment interest. Similarly, section 408.040 provides generally that a judgment accrues interest on the judgment balance from the date judgment is entered by the trial court until satisfaction is made at the rate of nine percent per annum. § 408.040.1, .2. But, where the

---

[1] All statutory references are to the Revised Statutes of Missouri Cum. Supp. 2020.

judgment is based on a contract bearing more than nine percent interest, the judgment "shall bear the same interest borne by such contract[ ]." § 408.040.2.

Here, MM Finance is licensed under section 408.510 as a consumer installment lender. Consequently, MM Finance is permitted to "contract for and receive interest and fees in accordance with section[ ] 408.100[ ]." § 408.510. Therefore, the underlying contract—despite its offensive and obscenely high interest rate—is authorized by the legislature and, thus, enforceable in our courts absent some other statutory limitation. And, under § 408.040.2, that means that prejudgment interest is to be calculated at the contract rate of 360%.

The dissent finds a statutory limitation on prejudgment interest in § 408.553. The version of § 408.553 in effect at the time of the underlying contract provided:

> Upon default the lender shall be entitled to recover no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment together with interest thereafter at the simple interest equivalent of the rate provided for in the contract.

§ 408.553, RSMo 2016. The dissent argues that, because the statute uses the phrase "with interest thereafter," it "does not expressly authorize the imposition of interest *prior* to 'final judgment.'" The dissent then looks to a concurring opinion out of the Eastern District to interpret § 408.553's application with respect to prejudgment interest. Though § 408.553 does not expressly *authorize* prejudgment interest, it does not need to do so because, as discussed *supra*, § 408.100 already does.

Further, the dissent ignores the language in § 408.553 that specifies that a lender facing a defaulting borrower may recover "*the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment.*" § 408.553 (emphasis added). Thus, § 408.553 permits a lender to recover the pay-off amount as of the date of judgment,

5

"together with interest thereafter." And § 408.170 expressly provides that, upon prepayment, a lender is entitled to recover accrued interest based on the rate or amount "of interest originally contracted for." *See* §§ 408.170.1(1). Thus, the only limitation imposed by § 408.553 is that it fixes the interest recoverable upon default by subjecting it to the same calculation as interest recoverable upon prepayment. And § 408.170, which specifies the manner of calculating accrued interest when a debt is prepaid, expressly provides that interest shall be calculated "on the basis of the rate of interest originally contracted for." Nothing in §§ 408.170 or 408.553 prohibits a lender from collecting post-default, prejudgment interest, and neither statute prohibits a lender from collecting post-default interest at the *rate* to which the parties have agreed in their contract (a rate expressly made enforceable by § 408.100, without regard to usury limitations). The dissent's conclusion that § 408.553 prohibits the collection of prejudgment interest at the contract rate is contrary to the plain language of §§ 408.100, 408.170, and 408.553. Nothing in § 408.553 precludes prejudgment interest; rather, the purpose of that section appears to be identifying how such interest is to be calculated by reference to § 408.170 and then limiting recovery to that amount. Accordingly, the dissent's conclusion that § 408.553 does not allow for prejudgment interest at all is contrary to the plain language of the statute.

Finally, the dissent relies heavily on a later amended version of § 408.553 to support its interpretation of the statute.[2] But our role in examining statutes is "to give effect to legislative intent as reflected in the plain language of the statute at issue." *Karney v. Dep't of Labor & Indus.*

---

[2] The dissent characterizes the amendment as "apparently *agreeing* with Judge Dowd's interpretation of section 408.553 on the topic of prejudgment interest but disagreeing with him about the purpose of section 408.500 and related statutes." But the amendment at issue occurred approximately six years after Judge Dowd's concurrence in *Hollins v. Capital Solutions Investments I, Inc.*, 477 S.W.3d 19 (Mo. App. E.D. 2015), making it unlikely that the amendment was responsive to the concurring opinion's interpretation. In addition, legislative changes in response to judicial pronouncements are often intended to change the effect of the judicial decision. Here, where Judge Dowd's opinion was dicta in a concurring opinion and thus had no binding affect, it is not clear that the subsequent legislative change was a response to the judicial opinion.

6

*Rels.*, 599 S.W.3d 157, 162 (Mo. banc 2020) (quoting *Parktown Imps., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). We do not employ rules of statutory interpretation unless the plain meaning "is ambiguous or defeats the purpose of the statute." *Id*. As discussed, the language of § 408.553 is plain and unambiguous and thus not subject to interpretation. Even if the relevant version of § 408.553 were subject to interpretation, the dissent's reliance on the 2021 amendment to the statute for guidance interpreting the relevant version is questionable. We recently recognized that "a later statutory enactment may not always be a reliable guide to the interpretation of the pre-amendment statute." *Spire Mo., Inc. v. Mo. Pub. Serv. Comm'n*, 607 S.W.3d 759, 774 (Mo. App. W.D. 2020). While, as the dissent notes, the purpose of a statutory amendment is ordinarily to change existing law, that is not always the case. Sometimes "that purpose can be [for] clarification rather than a change in existing law." *Id.* at 774 n.5[3] (quoting *State ex rel. Outcom, Inc. v. City of Peculiar*, 350 S.W.3d 57, 65 (Mo. App. W.D. 2011)).

Point I is granted.

As for post-judgment interest, we hold that the trial court likewise erred in failing to apply the contractual interest rate. This conclusion is consistent with the precedent established by this Court in *Ponca Finance Company v. Esser*. Ponca was a licensed consumer installment lender under section 408.510 and made a short-term $500 loan to Esser. *Ponca*, 132 S.W.3d at 931-32. The loan agreement provided for an annual interest rate of 125.96%. *Id*. at 931. Esser did not make any payments on the loan, and Ponca filed suit to collect. *Id*. Esser failed to appear, and the trial court entered a default judgment against him, but ordered that the judgment bear interest at

---

[3] We also note the effect the dissent's interpretation would have on the interest paid under the facts of this case: Rose would be obligated to pay the contract rate until default, and then the contract rate would drop to the statutory rate of 9% until the judgment was entered, at which point, the interest rate would return to the contract rate. It is difficult to imagine that this type of yo-yo effect was intended by the legislature.

the statutory rate of nine percent *from the date of judgment*. *Id*. Ponca appealed, claiming that the trial court erred in refusing to grant post-judgment interest at the interest rate agreed to by the parties. *Id*. This Court agreed that the trial court "misapplied the law when it ordered a different interest rate from the one negotiated by the parties." *Id*. at 932. We determined that:

> Section 408.100 very clearly states that the parties can agree to any interest rate, with no limit.[] The [trial] court was without authority to read a contrary intent into that statute and lower the rate to nine percent.
>
> The [trial] court applied the statutory rate of nine percent pursuant to section 408.020. But that section does not apply to this case. It clearly states that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, *when no other rate is agreed upon*[.]" Here, the parties had agreed upon a rate, so section 408.020 does not apply and the parties are bound by their agreement.

*Id*. (internal citations omitted). We concluded that, "[b]y enacting sections 408.510 and 408.100, the legislature has decided not to put a limit on interest rates for small loans. Where the statute has no exception to this limitless interest, the court cannot insert one." *Id*. We reversed and remanded for the trial court to modify its judgment and compute the amount owed based on an interest rate of 125.96%. *Id.*

Although we, like the *Ponca* court, appreciate the trial court's effort to reach a fair result, the trial court misapplied the law when it ordered a different post-judgment interest rate from the one agreed upon by the parties. The obscenely high contract rate of interest on Rose's consumer installment loan is permitted as the post-judgment interest rate (albeit at simple interest and not compound interest) under the statutory scheme enacted by the legislature that was in effect at the time of Rose's default and is thus statutorily exempted from any conclusion that the rate is excessive or otherwise usurious. We reiterate the observation of the *Ponca* court that, "[i]f the legislature believes that this rate is excessive, then the legislature can change the law." *Id*.

Point II is granted.

8

**Conclusion**

The trial court erred in limiting both the pre- and post-judgment interest calculations to the statutory rate of 9%. The court should have applied the contract rate of 360%. The judgment is reversed and remanded for entry of a new judgment reflecting the contractual interest rate and any further proceedings consistent with this opinion.

_____
Karen King Mitchell, Judge

Gary D. Witt, Judge, concurs.
Mark D. Pfeiffer, Presiding Judge, concurs in part and dissents in part in separate opinion.



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| MM FINANCE, LLC, DBA EZ MONEY<br>CHECK CASHING, | ) | |
| | ) | |
| Appellant, | ) | WD84379 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | April 12, 2022 |
| ANDREA I. ROSE, | ) | |
| | ) | |
| Respondent. | ) | |

**Concurring and Dissenting Opinion**

I concur with the majority opinion with the exception of the majority's analysis of the topic of prejudgment interest as it relates to the subject consumer installment loan. On that topic, I respectfully dissent.

As the majority opinion explains, our legislature has carved out an interest rate exception to statutes prohibiting lenders in Missouri from charging usurious interest rates on loans. The industry of lenders who receive this special interest rate exception are consumer installment lenders. *See* § 408.510[1] and *Ponca Fin. Co. v. Esser*, 132 S.W.3d 930, 932 (Mo. App. W.D. 2004). This statutory exception has presently resulted in the subject consumer installment loan bearing an

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented by the 2020 Cumulative Supplement.

interest rate **thirty-six times** in excess of the maximum annual interest rate that lenders in Missouri are ordinarily permitted to charge. *See* § 408.030.1 (maximum annual interest rate that a lender may charge is ten percent or the market rate calculated according to long-term U.S. government bond yields); *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 486 (Mo. App. W.D. 2010) (stating loans charging more than that prescribed by section 408.030.1 are usurious).

Though the consumer installment loan industry has received a statutory reprieve from the mandate against charging usurious rates, this exception is subject to the requirements ***and limitations*** placed upon the industry within the relevant statutory framework. One such ***limitation*** that section 408.510 is expressly subject to is section 408.553. The version of section 408.553 in effect at the time of default and final judgment on the underlying installment consumer loan stated:

> Upon default the lender shall be entitled to recover no more than the amount which the borrower would have been required to pay upon prepayment of the obligation on the date of final judgment together ***with interest thereafter*** at the simple interest equivalent of the rate provided for in the contract.

§ 408.553 (emphasis added).

"The goal of statutory interpretation is to give effect to the General Assembly's intent 'as reflected in the plain language of the statute at issue.'" *Mo. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 607 S.W.3d 728,732 (Mo. banc 2020) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014)). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used [and] to give effect to that intent if possible[.]" *Id*. (internal quotation marks omitted). We do this by "consider[ing] the words used in their plain and ordinary meaning." *Id*. (internal quotation marks omitted).

Since a plain reading of this language reflects that the words "with interest thereafter" are describing what happens *after* "final judgment," the statute does not expressly authorize the

2

imposition of interest *prior* to "final judgment." Though MM Finance, LLC, has cited this Court

to precedent directly discussing section 408.553's authorization of *post*-judgment interest at the

contract rate, it has not cited to any precedent discussing *pre*judgment interest; nor have I (nor the

majority opinion) located any Missouri case directly interpreting *pre*judgment interest pursuant to

section 408.553 in its pre-2021 form.

That said, in a concurring opinion from the Eastern District of our Court in *Hollins v.*

*Capital Solutions Investments I, Inc.*, 477 S.W.3d 19, 28 (Mo. App. E.D. 2015) (Dowd, J.,

concurring), our esteemed former colleague, Judge Robert G. Dowd, Jr., meticulously identified

the original purpose of section 408.500—that it was designed to make "small loans more available

to consumers to help them through a temporary financial difficulty" but not at the expense of

interest rates that quickly place debtors in the position of an "insurmountable debt." Judge Dowd

opined that, "I believe Section 408.500 has through amendment and through the unregulated nature

of the marketplace been gutted of its original intended purpose . . . ." *Id.* Leaving aside my

agreement or disagreement with Judge Dowd's sentiment, I find persuasive Judge Dowd's dictum

on the issue of prejudgment interest[2] pursuant to the pre-2021 version of section 408.553:

> I believe the trial court's judgment [which awarded prejudgment interest at the
> contract rate of 199.71% per annum] violates the statutory limitation on
> prejudgment interest. Section 408.553 provides: "Upon default the lender shall be
> entitled to recover no more than the amount which the borrower would have been
> required to pay upon prepayment of the obligation on the date of *final judgment*
> *together with interest thereafter* at the simple interest equivalent of the rate
> provided in the contract." (emphasis added [by Judge Dowd]). This statute
> indicates interest on these types of loans does not begin to accrue until the date of
> a "final judgment" and then only at the "simple interest equivalent of the rate
> provided in the contract." Therefore, the trial court's judgment, which includes

---

[2] In *Hollins v. Capital Solutions Investments I, Inc.*, 477 S.W.3d 19 (Mo. App. E.D. 2015), the procedural posture was that the appellant had *not* attacked the award of prejudgment interest at the contract rate as being in violation of section 408.553, either at the trial court or appellate court levels and, instead, focused an attack on a default judgment by way of a jurisdiction argument as to the alleged void nature of the trial court's judgment. *Id.* at 22.

> $729.90 in interest from the date the debtor defaulted until the date of the default judgment is in violation of the statute.

*Id.* at 29. And, though Judge Dowd implored the legislature to re-examine section 408.500 and related statutes to "return them to their original purpose of allowing small loans at manageable interest rates to aid our fellow citizens in managing the obligations of their daily lives," *id.*, the legislature—apparently ***agreeing*** with Judge Dowd's interpretation of section 408.553 on the topic of prejudgment interest but disagreeing with him about the purpose of section 408.500 and related statutes—re-examined section 408.553 to add *additional* interest obligations to debtors of small consumer installment loans, not *lesser* interest obligations. Section 408.553 was amended effective August 28, 2021, and now provides:

> Upon *default* the lender shall be entitled to recover the amount due and accrued under the agreement, *including interest* and penalties through the date of payment in full or *to the date of a final judgment*. *Following a judgment*, the lender may *additionally* recover the simple interest equivalent of the rate provided in the contract as applied to the amount of the judgment until the date the judgment is paid and satisfied.

(Emphasis added.)

"When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law." *Rinehart v. Laclede Gas Co.*, 607 S.W.3d 220, 227 (Mo. App. W.D. 2020) (internal quotation marks omitted). "This Court should never construe a statute in a manner that would moot the legislative changes, because the legislature is never presumed to have committed a useless act." *Id.* (internal quotation marks omitted). "To amend a statute and accomplish nothing from the amendment would be a meaningless act." *Id.* (internal quotation marks omitted). "[T]his Court must presume the legislature did not enact meaningless provisions." *Mo. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 607 S.W.3d at 733 (citing *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018)). "[I]n enacting a

4

new statute on the same subject as that of an existing statute, it is ordinarily the intent of the legislature to effect some change in the existing law." *Spire Mo., Inc. v. Mo. Pub. Serv. Comm'n*, 607 S.W.3d 759, 774 (Mo. App. W.D. 2020) (quoting *State ex rel. Edu-Dyne Sys., Inc. v. Trout*, 781 S.W.2d 84, 86 (Mo. banc 1989)). "If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act." *Id.*

"'[T]he legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent.'" *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 176 (Mo. App. W.D. 2021) (quoting *Exec. Bd. of Mo. Baptist Convention v. Mo. Baptist Univ.*, 569 S.W.3d 1, 18 (Mo. App. W.D. 2019)).

Ultimately, though the majority opinion simply ignores the 2021 legislative changes to section 408.553 and categorizes my reliance upon such legislative changes to existing law as "questionable," our Supreme Court has made it clear that "[l]egislative changes to existing law are highly instructive as to a statute's meaning." *Mo. State Conf. of Nat'l Ass'n for the Advancement of Colored People*, 607 S.W.3d at 734 (citing *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003)).

In reaching the result that it does, the majority opinion ignores these long-standing principles of statutory construction. I simply choose not to do so in arriving at my conclusion.

Applying the above-cited principles of statutory construction, I submit that the 2021 version of section 408.553 is meaningless and useless unless we conclude that the pre-2021 version of section 408.553 did *not* authorize the award of prejudgment interest. And, since the pre-2021 version of section 408.553 was in effect at the time of default and judgment below, I likewise submit that MM Finance, LLC, is *not* entitled to an award of prejudgment interest.

Accordingly, I must depart from the majority opinion on the topic of prejudgment interest and respectfully dissent with the decision of the majority opinion to award prejudgment interest to MM Finance, LLC, at the per annum interest rate of 360.00%.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge